COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Huff and Senior Judge Haley

REBECCA LYNN KNIGHT TAYLOR

                                                    MEMORANDUM OPINION[*]
v.        Record No. 1401-13-3                            PER CURIAM
                                                    FEBRUARY 4, 2014

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

(Sherwin J. Jacobs, on brief), for appellant.  Appellant submitting
on brief.

(Kimberly Van Horn Gutterman, Assistant County Attorney; Lisa L.
Knight, Guardian *ad litem* for the minor child, on brief), for
appellee.  Appellee and Guardian *ad litem* submitting on brief.

Rebecca Lynn Knight Taylor (mother) appeals an order terminating her parental rights to

her child, S.M.[1]  Mother argues that the trial court erred in terminating her parental rights because

(1) the Harrisonburg Rockingham Social Services District (the Department) failed to prove "by

clear and convincing evidence that [mother], without good cause, was unwilling or unable to

remedy the situation which led to the removal with [sic] a reasonable period of time, not to exceed

twelve month[s], notwithstanding reasonable rehabilitative efforts having been made by the

[Department]"; (2) the Department "offered no services" to mother after the child's removal; and

(3) mother maintained "substantial contact" with the Department while she was incarcerated and

"availed herself of as many rehabilitative services as could be offered to her during her period of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] This appeal concerns S.M.  Mother has four other children, none of whom live with her.

incarceration and after she was released from prison." Upon reviewing the record and briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm the decision of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

In February 2012, mother lived with her three-year-old child, the child's father, and the father's eight-year-old son. The Department received a complaint regarding inadequate food for the children. On February 23, 2012, the Department removed the eight-year-old child from the home.

Mother and the child's father met with the Department on February 24, 2012. The Department learned that mother placed locks on her child's bedroom door and on the refrigerator. The social worker told mother to remove the locks. The social worker also discussed services for the family.

Five days later, the social worker made an unannounced visit to mother's home. The locks were still on the child's bedroom door and the refrigerator. The Department filed for emergency removal of the child, which the Harrisonburg Rockingham Juvenile and Domestic Relations District Court (the JDR court) approved. The Department placed the child in foster care on February 29, 2012.

On March 2, 2012, mother was incarcerated. The Department stayed in contact with mother while she was incarcerated. The social worker informed mother about the child's progress, his doctor's appointments, and visitations with the father. Mother also was provided updated foster

care plans and encouraged to participate in parenting classes, mental health treatment, and anger management classes.

On February 28, 2013, the Department filed a petition to terminate mother's parental rights and sought to change the goal to adoption. The JDR court did not terminate mother's parental rights, did not approve of the foster care plan with the goal of adoption, and ordered that a new plan be filed with the goal of return home. The Department appealed the rulings.

On May 15, 2013, mother was released from incarceration. The Department recommended a psychological evaluation, a parenting evaluation, and counseling for mother. It also arranged for visitation between mother and the child.

On June 28, 2013, the parties appeared before the circuit court. After hearing the evidence and argument, the circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2) and approved the foster care plan with the goal of adoption. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the

> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

Mother argues that the trial court erred in finding that the Department met its burden under Code § 16.1-283(C)(2). She contends the Department did not provide services to her after the child's removal. She also asserts that the Department failed to prove that she failed to remedy the situation which led to her child being placed in foster care because she maintained contact with the Department and participated in rehabilitative services while in prison and when she was released.

The Department presented evidence of mother's criminal history. She had been incarcerated or on supervised probation since 1998.[2] At the time of the trial, mother had twenty-three years of suspended prison time due to prior convictions.

Mother has had the same probation officer since 2006. Her probation officer testified about the numerous services offered to mother while she was on probation. For example, mother had been referred to the Community Services Board, Rockingham Memorial Hospital, and a counselor for mental health treatment. Mother had been receiving mental health services since she was nine years old.

Contrary to mother's arguments, the record reflects that the Department offered services to mother. Prior to mother's incarceration, the social worker met with mother and the child's father. They discussed in-home services and parenting classes. The social worker told mother to remove the locks on the child's bedroom door and refrigerator. Five days later, the social worker went to the house and discovered that mother had not removed the locks. Since mother had not removed the locks, the Department sought the removal of the child.

---

[2] There was a period of time that mother left the state and failed to report to probation.

While mother was incarcerated, the Department provided foster care plans and updates about the child. The social worker recommended that mother participate in parenting classes, anger management classes, and mental health treatment. The social worker informed mother of the child's progress and doctor's appointments.

Once mother was released from prison, the Department recommended that mother participate in a psychological evaluation, parenting evaluation, and counseling. It also arranged visitations between mother and the child.

Despite these efforts made by the Department, mother argues that it did not make "reasonable and appropriate" efforts to offer her services. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992). Here, there was evidence of services being offered by the Department, as well as other agencies, in an effort to assist mother.

Mother also argues that the trial court erred in considering the services recommended by mother's probation officer. Code § 16.1-283(C)(2) states that "reasonable and appropriate efforts" can be made by "social, medical, mental health or other rehabilitative agencies." It does not limit the efforts to those made by the Department. Mother received mental health services from the Community Services Board, Rockingham Memorial Hospital, and other mental health therapists. She also received assistance from another social services department when two of the father's children lived with them in 2008. The trial court did not err in concluding that the Department had made "reasonable and appropriate" efforts to assist mother by providing her with the necessary services.

Mother presented evidence that while in prison, she completed a parenting class and an anger management class. Once she was released, she registered for another parenting class. She made an appointment for a psychological evaluation. She went to the Community Services Board to arrange for counseling. When asked about employment and housing, mother testified that she expected to start a job the following Monday. She had been living with her father after her release from prison, but she was moving to a shelter.

The trial court also heard evidence about the child. The social worker described the child as "feral" when he came into foster care. The child was not articulate. He had behavioral issues, such as screaming, hitting, and kicking. He had not had any immunizations. Since the child had been in foster care, the social worker testified that "[i]t's really just a night and day difference in behavior." The child's speech had improved, and he had more self-control and manners.

After hearing all of the evidence and argument, the trial court acknowledged that mother "has made progress."[3] The trial court stated that mother "has made some efforts, but at the same time I don't know how much effort we've got made." The trial court considered the totality of the evidence and "all the services presented to her and given to her," and found mother "hasn't reached a point that she needs to be and this must come to an end some time."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The child had been in foster care for approximately sixteen months and was doing well. At the time of the trial, mother did not have housing or stable employment. She still needed to

---

[3] The trial court judge was "familiar with" mother because she had appeared before him "for criminal matters in Page County several times." The judge stated that he had "been dealing with this lady for a long time."

address her mental health issues.  She also had pending criminal charges.  Consequently, mother had not remedied her situation which led to or required continuation of the child being in foster care.

Based on the record, the trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.